Catron, Ch. J.
delivered the opinion of the court.
The only question arising in this cause, is on the following part of the charge of the judge to the jury, on the trial in the circuit court: “Should the jury believe that the property described in the deed, was not delivered at the time the same was made, it would not amount to a fraud in itself, because that possession would not be inconsistent with the deed, but in accordance therewith: for it is the obvious intention of the deed, that ihe property, except the cotton gin, should remain in possession of Charles Faris until the trustee should advertise and sell the same; and any other construction of the deed would be a strained and unnatural one.”
Whether Lewis was bound to any amount for Charles Faris, is a matter of fact that it lay on Lewis clearly to prove, before the deed could be of any force, and sustain the suit in the name of Darwin, the trustee.
The circuit judge told the jury, that the possession of Charles Faris was consistent with the deed; that he was authorized to keep possession of all the property pledged, except the gin. The trust deed is silent on the subject. The gin was to be put into the charge of Lewis, and Darwin was to have the power to advertise and sell for cash, any of the property described in the deed of trust, to meet any of the demands embraced in it. The deed included household goods, hogs, a wagon and team, &c. If the hogs, sheep, seed cotton in the gin, horned cattle, and corn in the crib, fodder in the stack, and oats in the stack, were to remain in Fans’ possession until the contingency, whether Lewis would be injured, and how much, should arise, it was obvious the property was almost certain to be exhausted and wasted, to the injury of creditors. Was it the obvious intention of the, deed that the property should remain in the possession of Charles Faris until the trus *504 tee should advertise and sell? We think not. The deed, on its face, vested in Darwin the legal title, the right of immediate possession, and the right immediately to sell. He had no power or authority by the deed, to seize on the property, nor was Faris under any covenant to surrender it. The retaining possession by Faris, was prima facie fraudulent, as though the deed to Darwin had been absolute on its face. The doctrine holden in Callen vs. Thompson(a) at the present term, equally applies in this cause. It lay upon Lewis to prove the consideration moving to the execution of the deed, fair and bona Jide; showing he was clearly liable to pay Worley on Faris’ account, and by reason of his connexion with Faris as his partner. 2. That the deed was intended to secure him, Lewis, and had no intent to cover the property of Faris, or any part of it, to hinder and delay his creditors. If it was intended to cover the provisions, household goods, sheep, hogs, &c. for Faris’ use, yet to secure Lewis with the wagon, horses, gin, cotton, &c. still the deed would be void, because made to the intent to hinder and delay the creditors of Faris, in direct violation of the act of 1801, ch. 25, sec. 2. If this were permitted, the house might be well secured, and the furniture fraudulently covered. The mortgagee would never be in any danger hy reason of his fraud. The circuit court told the jury, that by the face of the deed, Faris was entitled to the possession, and that the holding of it would not amount to a fraud in itself. This was in effect telling the jury, that from the face of the deed, taken in connexion with the fact of Faris’ continuing in possession, the transaction was, as to the creditors of Faris, prima facie fair; whereas this court think it was prima facie fraudulent, and the proof *505 lay upon the plaintiff to show the transaction fair, not the defendant to prove it a fraud.
Creditors, or those bound as security for other persons, cannot be permitted to secure their honest debts on the debtor’s property, and at the same time to cover his remaining all from every other creditor, with the intent to let the debtor use and exhaust his means of payment, reserving the object secretly intended to be applied to the mortgagee’s debt. Hence it is, that the face of the courts has always been so strongly set against these sweeping deeds. And it would make no difference if it were expressed on the face of the deed, that the debtor was to retain the possession of the property. 2 Kent’s Com. 412, 419. The very circumstance, that he must necessarily consume the provisions, &c. would be a badge of fraud, so strong as to be almost conclusive, not as a matter of law, but of fact with the jury, that the deed was fraudulent. The creditor is now deprived of the auxiliary coercion intended by the arrest of the debtor’s person, and the counter claim against the property ought to receive the most effective support; and every rule calculated to prevent the debtor from masking it, be sustained with fortitude and vigor. 2 Kent’s Com. 419. Let the judgment be reversed, and the cause remanded for another trial.
Judgment reversed.

 Ante, page 475.